JOSEPH F. HAAG (SBN 248749)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
Joseph.Haag@wilmerhale.com

WILLIAM F. LEE (*pro hac vice forthcoming*)
RICHARD W. O'NEILL (*pro hac vice pending*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
William.Lee@wilmerhale.com
Richard.O'Neill@wilmerhale.com

Attorneys for Plaintiff
LENOVO (UNITED STATES) INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LENOVO (UNITED STATES) INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NOKIA TECHNOLOGIES OY,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lenovo (United States) Inc. ("Lenovo United States"), on personal knowledge as to its own acts, and on information and belief as to all other acts based on its own and its attorneys' investigation, by and through its attorneys, alleges as follows:

## **INTRODUCTION**

1.      Defendant Nokia Technologies Oy ("Nokia Oy") has asserted, and continues to assert, that Lenovo United States is required to take a license to patents that Nokia Oy claims to own and claims are essential to practice the H.264 video compression standard.  However, with respect to each of the nineteen patents discussed below ("Nokia Patents"), the prior owner (Nokia Corporation) failed to comply with its contractual obligation to disclose any rights in the allegedly essential Nokia Patents to the relevant standards-setting organization before the H.264 standard was "frozen"—thus depriving members of the ability to take those alleged patent rights into account when the standard was still under development.

2.      Because this late disclosure breached the contract that existed between Nokia Corporation and the H.264 standards-setting organization (and Lenovo United States is a third-party beneficiary of that contract and has suffered harm as a result of the breach) and also violated California unfair competition law, each of the Nokia Patents is unenforceable against the H.264 standard.  Moreover, because this repeated late disclosure was egregious, and because Nokia Oy and/or Nokia Corporation have leveraged the allegedly standard-essential nature of the late-disclosed Nokia Patents to obtain unjust benefits, the Nokia Patents are unenforceable against the H.264 standard under the doctrine of implied waiver.

## **PARTIES**

3.      Plaintiff Lenovo United States is a company organized under the laws of Delaware, with its principal place of business at 8001 Development Drive, Morrisville, North Carolina 27560.

Case No.                                                                                                          COMPLAINT

1      4.      On information and belief, Defendant Nokia Oy is a Finnish corporation that is headquartered in and does business in Sunnyvale, California.[1]  Nokia Oy claims to own by assignment all right, title, and interest in and to the Nokia Patents.

5.      On information and belief, Defendant Nokia Oy is a wholly owned subsidiary of Nokia Corporation.  Defendant Nokia Oy's primary business is to monetize the patent rights obtained by the various Nokia entities, including Nokia Corporation.

**<u>JURISDICTION AND VENUE</u>**

6.      Lenovo United States brings this action under 28 U.S.C. § 2201, federal patent law, California contract law, and the California Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 et seq.

7.      The Court has original jurisdiction over Lenovo United States' claims pursuant to 28 U.S.C. § 1332 because Lenovo United States is a citizen of Delaware and North Carolina, Nokia Oy is a citizen of Finland and California, and the value of the matter in controversy (including, among other things, Nokia Oy's demand for Lenovo United States to take a license to its patents that allegedly cover the H.264 standard) exceeds $75,000.

8.      The Court also has subject matter jurisdiction under 28 U.S.C. § 2201 over Lenovo United States' request that the Court declare the Nokia Patents unenforceable in relation to the H.264 standard under U.S. patent law.

---

[1] *See* Nokia Bell Labs, https://web.archive.org/web/20201024004255/https://www.bell-labs.com/connect/global-locations/sunnyvale-ca/ (as of October 24, 2020, last visited December 7, 2020) ("Nokia opened the Sunnyvale site in December 2010. ***This location is home to*** Nokia Bell Labs, ***Nokia Technologies***, Mobile and Fixed Networks.") (emphases added); *see also* Internet Archive, Nokia Corporation Website, *Nokia Technologies*, https://web.archive.org/web/20170301164948/https://www.nokia.com/en_int/about-us/who-we-are/our-businesses/nokia-technologies (as of March 1, 2017; last visited December 7, 2020) ("our headquarters in Sunnyvale, CA"); Chris O'Brien, *Nokia Technologies President on the Future of His 'Startup': 'Anything Is Possible,'* Venturebeat, http://venturebeat.com/2016/08/22/nokia-technologies-president-on-the-future-of-his-startup-anything-is-possible/ (last visited December 7, 2020) (describing Nokia Technologies as "[b]ased in Sunnyvale" and "based in Silicon Valley"); Dkt. 53 [Ans. to First Am. Compl.] ¶ 4, *Nokia Techs. Oy v. Lenovo (United States) Inc. et al.*, No. 5:19-cv-427-BO (E.D. N.C. June 29, 2020) ("Nokia [Technologies Oy] admits that it does business in Sunnyvale, California.").

9.    The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Lenovo United States' state law breach of contract and unfair competition claims because those claims form part of the same case or controversy as the federal law claims.

10.    The Court has personal jurisdiction over Nokia Oy on the basis of Nokia Oy's continuous and systematic contacts with the state of California, including because Nokia Oy maintains a place of business in Sunnyvale, California, and conducts business there as well.  *See supra* n.1.

11.    Venue in this district is proper under 28 U.S.C. § 1391(c)(2) because Nokia Oy is subject to the Court's personal jurisdiction as explained above.

## INDUSTRY TECHNICAL STANDARDS

12.    Industry technical standards are sets of technical guidelines and protocols that enable a product produced by one manufacturer to interoperate with products produced by other manufacturers that support the same standard.  Standards are developed and released by industry groups called standard setting organizations (or SSOs).

13.    During standardization, industry participants in the SSO propose ideas for inclusion in the standard.  The SSO collectively considers proposals and then chooses which proposals to adopt into the standard, either as proposed or with modifications from other participants.  The standard is then adopted (or "frozen") and published for use by product suppliers.

14.    The promulgation of standards can help increase competition among suppliers and lead to improved products for consumers.  Absent appropriate rules and adherence thereto, however, standards also can lead to anticompetitive abuses, particularly when participants in the standardization process have patent rights relating to technology being proposed for the standard. Before standardization, suppliers of various technologies compete with other suppliers that offer similar functionality, and the royalties a patent owner can demand for its technology is constrained by the value of the patented technology standing alone and the availability of alternative technical approaches to perform the functionality claimed in the patent.  Post-standardization, however, former alternatives to perform the standardized functions are often no longer viable substitutes for those practicing the standard and thus no longer constrain royalties relating to standardized

Case No.                                                                                                    COMPLAINT

technology.  As a result, a patent holder may demand royalties attributable to inclusion of the patented technology in the standard rather than the actual value of the patented technology.

15.     The danger that a patent holder will gain an arbitrary and unfair advantage in demanding royalties is particularly high when an SSO standardization participant proposes ideas to be included in the standard that are identical or similar to the ideas the participant separately seeks to patent (or has already patented).  Such a situation creates the risk that a participant will intentionally push the SSO to adopt—unknowingly—the participant's patented technology, even though the SSO might have adopted a different technology or excluded the functionality from the standard if the SSO was timely made aware that the patent-holding participant claims to have patent rights covering the technology under consideration.

16.     In response to this substantial risk of exploitative behavior, most SSOs have adopted intellectual property rights (IPR) policies that seek to minimize the potential for this type of abuse. Among other things, these IPR policies typically require participants to timely disclose any alleged standard-essential patent rights (including rights in pending patent applications) that might cover the technology that the SSO is considering for standardization.  By requiring members to declare any patent rights that, if adopted into the standard, might be essential to practice the standard, members can evaluate alternative technical proposals, decide not to include the proposed technology, and consider other potential implications of any patents that that might cover the various proposals—all *before* the standard is frozen and *before* industry participants become locked into implementing the standard in their products.

17.     SSOs adopt such disclosure policies to promote the widespread use of their standards by suppliers and consumers.  Standards that are developed subject to a requirement of full, timely disclosure of potentially essential patent rights ensure that the resulting standard is not encumbered by patents that SSO members were unaware of during the standardization process.

### **THE H.264 STANDARD**

18.     This Complaint concerns nineteen patents that Nokia Oy and/or Nokia Corporation have claimed are essential to practice the H.264 video compression standard.

19.     The H.264 standard was developed by the Joint Video Team ("JVT"), which is an SSO composed of (1) the Motion Picture Experts Group (MPEG), which is the video subgroup of the International Organization for Standardization/International Electrotechnical Commission ("ISO/IEC"), and (2) the Video Coding Experts Group ("VCEG"), which is a subgroup of the International Telecommunications Union ("ITU").   According to the ITU's Term of Reference for Joint Video Team (JVT) Activities, the JVT operated as a "joint group under the ordinary policies and procedures of both organisations," and committed to working in compliance with the IPR policies, reporting requirements, and procedures of the ITU and the ISO/IEC.[2]

20.     Early development of the H.264 standard was performed by the ITU's VCEG, and the JVT was created in 2001 to finalize it.  The first version of the H.264 standard was frozen and then published in May 2003.  Subsequent editions were published in March 2005, November 2007, and approximately annually thereafter.

21.     According to the ITU, H.264 "represents an evolution of the existing video coding standards" and "was developed in response to the growing need for higher compression of moving pictures for various applications such as videoconferencing, digital storage media, television broadcasting, Internet streaming, and communication."[3]

**DISCLOSURE OBLIGATIONS UNDER THE ITU'S PATENT POLICY**

22.     At all times relevant to these allegations, Nokia Corporation was a member of the ITU-T[4] and actively participated in developing the H.264 standard, including by attending meetings and making technical proposals for certain aspects of the H.264 standard.  As a result, Nokia Corporation was bound by the ITU's Patent Policy (now known as the Common Patent

---

[2] ITU, "Terms of Reference for the Joint Video Team (JVT) Activities," https://www.itu.int/dms_pub/itu-t/oth/34/01/T34010000010001PDFE.pdf (last visited December 7, 2020).]

[3] ITU-T, "Summary," http://www.itu.int/dms_pubrec/itu-t/rec/h/T-REC-H.264-200901-S!Cor1!SUM-HTM-E.htm (last visited December 7, 2020).]

[4] The ITU-T is the sector of the ITU that focuses on standardization.  The ITU-T "assembles experts from around the world to develop international standards known as ITU-T Recommendations, which act as defining elements of the global infrastructure of information and communication technologies."  ITU, https://www.itu.int/en/join/Pages/default.aspx (last visited December 7, 2020).

Case No.                                                                                                    COMPLAINT

Policy for the ITU-T/ITU-R/ISO/IEC.  As assignee of the Nokia Patents, Nokia Oy is bound by the contractual commitments that Nokia Corporation owed under the ITU Patent Policy, and also stands in the shoes of Nokia Corporation with respect to any remedies arising from a breach or other violation of those contractual commitments.[5]

23.    The ITU Patent Policy in effect when Nokia Corporation began participating in development of the H.264 standard states that "any ITU-T member organization putting forward a standardization proposal should, from the outset, draw the attention of the [Telecommunication Standardization Bureau (TSB)] to any known patent or to any known pending patent application, either their own or of other organizations."[6]

24.    The ITU's Guidelines for Implementation of the ITU Patent Policy state (1) "[t]he term 'from the outset' as it appears in paragraph 1 of the TSB Patent Policy . . . implies that such information should be disclosed as soon as possible, i.e. as soon as it is becoming clear that an evolving draft Recommendation will, in fact, fully or partly include patented elements";[7] and (2) "[a]ny ITU Member State or Sector Member organization aware of a patent held by itself or others, which may fully or partly cover elements of the draft Recommendation(s) proposed for approval, is requested to disclose such information to the TSB, in no case later than the date scheduled for approval of the Recommendation(s)."[8]  According to the Guidelines' statement of purpose, "[t]he guidelines encourage the early disclosure and identification of patents that may relate to Recommendations under development.  In doing so, greater efficiency in standards development is possible and potential patent rights problems can be avoided."[9]

25.    Despite its involvement in developing the H.264 standard, and despite being bound by the ITU's Patent Policy, Nokia Corporation repeatedly failed to disclose during development of the H.264 standard that it had rights in the Nokia Patents that Nokia Corporation and/or Nokia Oy

---

[5] Ex. 1 (ITU, "Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC" (April 23, 2012) Part 7.)

[6] Ex. 2 (ITU, Guidelines for Implementation of the TSB Patent Policy (July 7, 1999), at 7 (Appendix I)).

[7] *Id.* at 3 (Section 2.4).

[8] *Id.* at 4 (Section 3.1).

[9] *Id.* at 2 (Section 1).

Case No.                                                                                                                    COMPLAINT

have since claimed are essential to practice the H.264 standard.  Indeed, Nokia Corporation did not notify the ITU (or the ISO/IEC) about any of the Nokia Patents until long after the first iteration of the H.264 standard was frozen and then published in May 2003.

26.     Upon information and belief, Nokia Corporation did so to induce JVT/ITU members to incorporate technology into the H.264 standard that Nokia Oy now contends is covered by the Nokia Patents—but without providing those members with the ability to consider those alleged patent rights before the H.264 standard was frozen.  If Nokia Corporation had timely disclosed its rights in the Nokia Patents, as it was contractually required to do, the JVT/ITU could have, for example, adopted one or more alternative technologies or declined to include the relevant functionality in the final standard.  By failing to disclose its rights in the Nokia Patents before the H.264 standard was frozen, Nokia deprived members of the ability to consider those options.

27.     Members of the ITU and other third-party beneficiaries of Nokia Corporation's obligations under the ITU Patent Policy reasonably expected Nokia Corporation to disclose its known patents and patent applications at the outset of the standardization process, and not after functionality allegedly covered by a patent or patent application was approved for incorporation into the H.264 standard and/or after the H.264 standard was frozen.  If Nokia Corporation held or had applied for patents potentially essential to the H.264 standard, then under the binding contractual rules of the ITU Patent Policy, Nokia Corporation was obligated to disclose those patents from the outset, and at least before the H.264 standard was frozen.

28.     Nokia Corporation did not submit a Patent Statement and Licensing Declaration to the ITU specifically identifying any of the Nokia Patents (or the applications for those patents) as allegedly essential to any specific aspect of the H.264 standard before the standard was frozen, even though Nokia Corporation knew it possessed those patent rights during development of the H.264 standard, as detailed below.

29.     Indeed, Nokia Corporation did not disclose the existence of the Nokia Patents (and/or applications for those patents) during the H.264 standard-setting process, even while Nokia Corporation personnel (including named inventors of the asserted patents) participated in the relevant working groups that adopted the same technology that Nokia Oy now claims is

covered by the Nokia Patents, and even though participants at meetings were frequently reminded of the Patent Policy and their contractual obligation to disclose potentially essential patent rights.

30.    Under the ITU Patent Policy, Nokia Corporation had binding contractual commitments with the ITU, with ITU members, and with other SSOs participating in the H.264 standard development, all for the benefit of the SSOs, their members, and any entity involved in making, using, selling, offering for sale, and/or importing products that support the H.264 standard, including Lenovo United States.  All these entities reasonably relied on the ITU's rules, including the ITU's Patent Policy, in supplying products that support the H.264 standard.

31.    Lenovo United States has invested significant time and resources in connection with supplying products in reliance on the transparency of the ITU's standard-setting process and the requirement that H.264 participants comply with the ITU's rules, including the ITU's Patent Policy requirement for members to timely disclose any patent rights that might be essential during development of the H.264 standard.

32.    Upon information and belief, Nokia Corporation's failure to timely disclose its rights in the Nokia Patents was intended to and did cause ITU members to incorporate technology into the H.264 standard that Nokia Corporation and/or Nokia Oy have since claimed is covered by the Nokia Patents, all without the benefit of having knowledge of those alleged patent rights before the H.264 standard was frozen.  Upon information and belief, had Nokia Corporation timely disclosed its rights in the Nokia Patents, JVT/ITU members would have decided to adopt an alternative technology to perform the relevant functionality or left the relevant technology out of the H.264 standard.  Nokia Corporation's conduct therefore distorted and impaired the standardization process in a manner that has harmed Lenovo United States and others, such that the accused functionality would not have been included in the H.264 standard but for the lack of timely disclosure.

33.    This standards-setting misconduct is not an isolated incident, as Nokia Corporation has a history of failing to disclose its allegedly essential patent rights to standards setting organizations.  As just one example, the Federal Circuit determined in *Core Wireless Licensing S.A.R.L. v. Apple Inc.* that Nokia had a duty to disclose its allegedly essential patent rights before

-9-

the relevant standard was frozen, and breached that contractual obligation by waiting years after the standard was frozen to first do so.  899 F.3d 1356, 1368 (Fed. Cir. 2018).

### THE '576 PATENT

34.    U.S. Patent No. 7,006,576 ("the '576 patent") is titled "Video Coding," and names Miska Hannuksela as inventor.

35.    Upon information and belief, the '576 patent is assigned to Nokia Oy.

36.    As assignee of the '576 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '576 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '576 patent.

37.    The '576 patent issued on February 28, 2006, from an application filed July 19, 2000, and claims priority to an application filed on July 19, 1999.

38.    Upon information and belief, Nokia Oy contends that the '576 patent is essential to practice certain aspects of the H.264 standard.

39.    Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '576 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '211 PATENT

40.    U.S. Patent No. 6,711,211 ("the '211 patent") is titled "Method for Encoding and Decoding Video Information, a Motion Compensated Video Encoder and a Corresponding Decoder," and names Jani Lainema as inventor.

41.    Upon information and belief, the '211 patent is assigned to Nokia Oy.

42.    As assignee of the '211 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '211 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '211 patent.

43.    The '211 patent issued on March 23, 2004, from an application filed May 8, 2000.

44.     Upon information and belief, Nokia Oy contends that the '211 patent is essential to practice certain aspects of the H.264 standard.

45.     Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '211 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '268 PATENT

46.     U.S. Patent No. 6,879,268 ("the '268 patent") is titled "Adaptive Variable Length Coding of Digital Video," and names Marta Karczewicz as inventor.

47.     Upon information and belief, the '268 patent is assigned to Nokia Oy.

48.     As assignee of the '268 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '268 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '268 patent.

49.     The '268 patent issued on April 12, 2005, from an application filed July 29, 2003, and claims priority to an application filed on January 22, 2002.

50.     Upon information and belief, Nokia Oy contends that the '268 patent is essential to practice certain aspects of the H.264 standard.

51.     Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '268 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '502 PATENT

52.     U.S. Patent No. 6,954,502 ("the '502 patent") is titled "Method for Encoding and Decoding Video Information, a Motion Compensated Video Encoder and a Corresponding Decoder," and names Jani Lainema as inventor.

53.     Upon information and belief, the '502 patent is assigned to Nokia Oy.

54.     As assignee of the '502 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's

rights and obligations under the '502 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '502 patent.

55.   The '502 patent issued on October 11, 2005, from an application filed February 3, 2004, and claims priority to an application filed on May 8, 2000.

56.   Upon information and belief, Nokia Oy contends that the '502 patent is essential to practice certain aspects of the H.264 standard.

57.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '502 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

**THE '450 PATENT**

58.   U.S. Patent No. 7,082,450 ("the '450 patent") is titled "Implementation of a Transform and of a Subsequent Quantization," and names Antti Hallapuro and Kim Simelius as inventors.

59.   Upon information and belief, the '450 patent is assigned to Nokia Oy.

60.   As assignee of the '450 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '450 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '450 patent.

61.   The '450 patent issued on July 25, 2006, from an application filed August 30, 2001.

62.   Upon information and belief, Nokia Oy contends that the '450 patent is essential to practice certain aspects of the H.264 standard.

63.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '450 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

**THE '456 PATENT**

64.   U.S. Patent No. 7,206,456 ("the '456 patent") is titled "Method for Encoding and Decoding Video Information, a Motion Compensated Video Encoder and a Corresponding Decoder," and names Jani Lainema as inventor.

-12-

65.    Upon information and belief, the '456 patent is assigned to Nokia Oy.

66.    As assignee of the '456 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '456 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '456 patent.

67.    The '456 patent issued on April 17, 2007, from an application filed November 26, 2002, and claims priority to an application filed on November 27, 2001.

68.    Upon information and belief, Nokia Oy contends that the '456 patent is essential to practice certain aspects of the H.264 standard.

69.    Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '456 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '674 PATENT

70.    U.S. Patent No. 7,289,674 ("the '674 patent") is titled "Spatial Prediction Based Intra Coding," and names Marta Karczewicz as inventor.

71.    Upon information and belief, the '674 patent is assigned to Nokia Oy.

72.    As assignee of the '674 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '674 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '674 patent.

73.    The '674 patent issued on October 30, 2007, from an application filed June 10, 2003, and claims priority to an application filed on June 11, 2002.

74.    Upon information and belief, Nokia Oy contends that the '674 patent is essential to practice certain aspects of the H.264 standard.

75.    Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '674 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

-13-

## THE '001 PATENT

76.     U.S. Patent No. 7,302,001 ("the '001 patent") is titled "Random Access Points in Video Coding," and names Ye-Kui Wang and Miska Hannuksela as inventors.

77.     Upon information and belief, the '001 patent is assigned to Nokia Oy.

78.     As assignee of the '001 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '001 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '001 patent.

79.     The '001 patent issued on November 27, 2007, from an application filed April 28, 2003, and claims priority to an application filed on April 29, 2002.

80.     Upon information and belief, Nokia Oy contends that the '001 patent is essential to practice certain aspects of the H.264 standard.

81.     Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '001 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '660 PATENT

82.     U.S. Patent No. 7,403,660 ("the '660 patent") is titled "Encoding Picture Arrangement Parameter in Picture Bitstream," and names Miska Hannuksela as inventor.

83.     Upon information and belief, the '660 patent is assigned to Nokia Oy.

84.     As assignee of the '660 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '660 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '660 patent.

85.     The '660 patent issued on July 22, 2008, from an application filed April 30, 2003.

86.     Upon information and belief, Nokia Oy contends that the '660 patent is essential to practice certain aspects of the H.264 standard.

Case No.                                                                                    COMPLAINT

87.     Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '660 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '447 PATENT

88.     U.S. Patent No. 7,706,447 ("the '447 patent") is titled "Switching Between Bitstreams in Video Transmission," and names Marta Karczewicz and Ragip Kurcenen as inventors.

89.     Upon information and belief, the '447 patent is assigned to Nokia Oy.

90.     As assignee of the '447 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '447 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '447 patent.

91.     The '447 patent issued on April 27, 2010, from an application filed January 3, 2002, and claims priority to an application filed on January 3, 2001.

92.     Upon information and belief, Nokia Oy contends that the '447 patent is essential to practice certain aspects of the H.264 standard.

93.     Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '447 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '052 PATENT

94.     U.S. Patent No. 7,711,052 ("the '052 patent") is titled "Video Coding," and names Miska Hannuksela and Kerem Caglar as inventors.

95.     Upon information and belief, the '052 patent is assigned to Nokia Oy.

96.     As assignee of the '052 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '052 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '052 patent.

-15-

97.    The '052 patent issued on May 4, 2010, from an application filed May 15, 2001, and claims priority to an application filed on May 15, 2000.

98.    Upon information and belief, Nokia Oy contends that the '052 patent is essential to practice certain aspects of the H.264 standard.

99.    Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '052 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '473 PATENT

100.    U.S. Patent No. 7,751,473 ("the '473 patent") is titled "Video Coding," and names Miska Hannuksela as inventor.

101.    Upon information and belief, the '473 patent is assigned to Nokia Oy.

102.    As assignee of the '473 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '473 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '473 patent.

103.    The '473 patent issued on July 6, 2010, from an application filed May 2, 2002, and claims priority to an application filed on May 15, 2000.

104.    Upon information and belief, Nokia Oy contends that the '473 patent is essential to practice certain aspects of the H.264 standard.

105.    Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '473 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '531 PATENT

106.    U.S. Patent No. 7,826,531 ("the '531 patent") is titled "Indicating Regions Within a Frame," and names Ye-Kui Wang and Miska Hannuksela as inventors.

107.    Upon information and belief, the '531 patent is assigned to Nokia Oy.

108.    As assignee of the '531 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's

rights and obligations under the '531 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '531 patent.

109.   The '531 patent issued on November 2, 2010, from an application filed January 19, 2006, and claims priority to an application filed on April 29, 2002.

110.   Upon information and belief, Nokia Oy contends that the '531 patent is essential to practice certain aspects of the H.264 standard.

111.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '531 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '145 PATENT

112.   U.S. Patent No. 8,005,145 ("the '145 patent") is titled "Method and Apparatus for Transferring Video Frame in Telecommunication System," and names Jani Lainema as inventor.

113.   Upon information and belief, the '145 patent is assigned to Nokia Oy.

114.   As assignee of the '145 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '145 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '145 patent.

115.   The '145 patent issued on August 23, 2011, from an application filed July 6, 2004, and claims priority to an application filed on August 11, 2000.

116.   Upon information and belief, Nokia Oy contends that the '145 patent is essential to practice certain aspects of the H.264 standard.

117.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '145 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '321 PATENT

118.   U.S. Patent No. 8,050,321 ("the '321 patent") is titled "Grouping of Image Frames in Video Coding," and names Miska Hannuksela as inventor.

119.   Upon information and belief, the '321 patent is assigned to Nokia Oy.

-17-

120.   As assignee of the '321 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '321 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '321 patent.

121.   The '321 patent issued on November 1, 2011, from an application filed January 25, 2006, and claims priority to an application filed on January 23, 2002.

122.   Upon information and belief, Nokia Oy contends that the '321 patent is essential to practice certain aspects of the H.264 standard.

123.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '321 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

### THE '539 PATENT

124.   U.S. Patent No. 8,107,539 ("the '539 patent") is titled "Method for Error Concealment in Video Sequences," and names Miska Hannuksela and Ye-Kui Wang as inventors.

125.   Upon information and belief, the '539 patent is assigned to Nokia Oy.

126.   As assignee of the '539 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '539 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '539 patent.

127.   The '539 patent issued on January 31, 2012, from an application filed July 15, 2003, and claims priority to an application filed on July 15, 2002.

128.   Upon information and belief, Nokia Oy contends that the '539 patent is essential to practice certain aspects of the H.264 standard.

129.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '539 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

1

## THE '744 PATENT

2

130.   U.S. Patent No. 8,107,744 ("the '744 patent") is titled "Picture Buffering for

3

Prediction References and Display," and names Dong Tian, Miska Hannuksela, and Ye-Kui Wang

4

as inventors.

5

131.   Upon information and belief, the '744 patent is assigned to Nokia Oy.

6

132.   As assignee of the '744 patent, which was assigned to Nokia Corporation during the

7

development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's

8

rights and obligations under the '744 patent and to Nokia Corporation's rights and obligations

9

arising under the ITU Patent Policy with respect to the '744 patent.

10

133.   The '744 patent issued on January 31, 2012, from an application filed November 6,

11

2003, and claims priority to an application filed on December 3, 2002.

12

134.   Upon information and belief, Nokia Oy contends that the '744 patent is essential to

13

practice certain aspects of the H.264 standard.

14

135.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the

15

'744 patent or its underlying application to the ITU as potentially essential to the H.264 standard

16

before the relevant provisions of the H.264 standard were frozen.

17

## THE '134 PATENT

18

136.   U.S. Patent No. 8,204,134 ("the '134 patent") is titled "Grouping of Image Frames

19

in Video Coding," and names Miska Hannuksela as inventor.

20

137.   Upon information and belief, the '134 patent is assigned to Nokia Oy.

21

138.   As assignee of the '134 patent, which was assigned to Nokia Corporation during the

22

development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's

23

rights and obligations under the '134 patent and to Nokia Corporation's rights and obligations

24

arising under the ITU Patent Policy with respect to the '134 patent.

25

139.   The '134 patent issued on June 19, 2012, from an application filed January 25, 2006,

26

and claims priority to an application filed on January 23, 2002.

27

140.   Upon information and belief, Nokia Oy contends that the '134 patent is essential to

28

practice certain aspects of the H.264 standard.

-19-

141.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '134 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## THE '863 PATENT

142.   U.S. Patent No. 8,654,863 ("the '863 patent") is titled "Video Coding," and names Miska Hannuksela as inventor.

143.   Upon information and belief, the '863 patent is assigned to Nokia Oy.

144.   As assignee of the '863 patent, which was assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's rights and obligations under the '863 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '863 patent.

145.   The '863 patent issued on February 18, 2014, from an application filed April 6, 2005, and claims priority to an application filed on July 19, 1999.

146.   Upon information and belief, Nokia Oy contends that the '863 patent is essential to practice certain aspects of the H.264 standard.

147.   Upon information and belief, Nokia Corporation and Nokia Oy did not disclose the '863 patent or its underlying application to the ITU as potentially essential to the H.264 standard before the relevant provisions of the H.264 standard were frozen.

## COUNT I: BREACH OF CONTRACT

148.   Lenovo United States repeats and realleges the allegations in the foregoing Paragraphs as if set forth fully herein.

149.   At all relevant times, Nokia Corporation had a contractual duty under the ITU's Patent Policy to disclose any patent rights that might be essential to the H.264 standard before the standard was frozen.  As assignee of the Nokia Patents, Nokia Oy is bound by the contractual commitments that Nokia Corporation owed under the ITU's Patent Policy, and is successor-in-interest with respect to Nokia Corporation's rights and obligations arising under that Policy, including with respect to the obligation to disclose any allegedly essential patents rights before the H.264 standard was frozen.

-20-

150.   During development of the H.264 standard, Nokia Corporation employees attended meetings and submitted proposals for technology to be included in the H.264 standard.  However, at no time during that process did Nokia Corporation disclose that it had previously filed patent applications to which the Nokia Patents claim priority.  Rather, only after the H.264 standard was frozen did Nokia Corporation and/or Nokia Oy first claim that the Nokia Patents are essential to the standard.  This late disclosure breached Nokia Corporation's contractual duty under the Patent Policy, and Nokia Oy now stands in Nokia Corporation's shoes with respect to these breaches.

151.   Lenovo and others relied on the ITU's Patent Policy, and reasonably expected that ITU participants and their successors-in-interest, including Nokia Corporation and/or Nokia Oy, had complied with all aspects of that Policy during development of the H.264 standard.

152.   Every party making, using, selling, offering for sale, and/or importing products that support aspects of the H.264 standard, including Lenovo United States, is an intended third-party beneficiary of Nokia Corporation's and/or Nokia Oy's contractual commitments under the ITU's Patent Policy, including the requirement for members to timely to disclose any allegedly essential patent rights before the H.264 standard was frozen.

153.   As a direct, proximate, and foreseeable result of Nokia Corporation's and/or Nokia Oy's breach of the ITU Patent Policy with respect to late disclosure of each of the Nokia Patents, as alleged above, Lenovo United States has suffered harm, both as a customer and as a supplier of downstream products.  This harm includes, among other things, being forced to defend against Nokia Oy's claims that it is entitled to royalties based on patents that are allegedly essential to the H.264 standard but that were not timely disclosed in violation of the ITU's Patent Policy—and therefore for which Nokia Oy is not entitled to claim any royalties.  The harm to Lenovo also includes being threatened with increased costs, loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers as a result of Nokia Oy's allegations.

## COUNT II: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

154.   Lenovo United States repeats and realleges the allegations in the foregoing Paragraphs as if set forth fully herein.

-21-

155.   By the acts alleged, Nokia Corporation and/or Nokia Oy have engaged in unlawful, unfair, and/or fraudulent business acts or practices within the meaning of the California Unfair Competition Law, Business and Professions Code ("UCL") §§ 17200 et seq.  The UCL prohibits, among other things, practices that offend established public policy or are unethical, oppressive, unscrupulous, or substantially injurious to consumers.  The UCL likewise prohibits deceptive business practices.

156.   Nokia Corporation and/or its successor-in-interest Nokia Oy committed such wrongful actions at least by engaging in a pattern of failing to timely disclose any of the Nokia Patents during development of the H.264 standard, despite a contractual obligation to do so—all while actively participating in the H.264 standard-setting process.  Nokia Corporation submitted proposals for technology to be included in the H.264 standard, while separately filing the applications leading to the Nokia Patents, and without declaring any of the Nokia Patents as allegedly essential to the H.264 standard before the standard was frozen.  Nokia Corporation and/or Nokia Oy then later claimed that the Nokia Patents are essential to practice that standard.

157.   Nokia Corporation and Nokia Oy's pattern of behavior violated the rules of the H.264 standard-setting organizations and unfairly and deceptively prevented those organizations from fully evaluating relevant technologies under consideration when developing the H.264 standard.  Due to that late disclosure, industry participants became "locked in" to use the standardized functionality that Nokia Oy now claims is covered by the Nokia Patents, but without the benefit of considering those patent rights during development of the standard (which, among other things, upon information and belief, would have resulted in the selection of a competing technology or elimination of the functionality altogether).

158.   Lenovo and others relied on the ITU's Patent Policy, and reasonably expected that ITU participants, including Nokia Corporation and/or its successor-in-interest Nokia Oy, had complied with all aspects of that Policy during development of the H.264 standard.

159.   As assignee of the Nokia Patents, which were assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's

obligations as a participant in development of the H.264 standard and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the Nokia Patents.

160.   Nokia Oy has demanded licensing fees for the Nokia Patents that were not timely disclosed in contravention of the ITU's Patent Policy (and thus, for which Nokia Oy is not entitled to collect any royalties based on alleged practice of the H.264 standard).  Nokia Oy's patent monetization conduct with respect to the Nokia Patents is based on the assertion of allegedly essential patents that were not disclosed to the ITU before the H.264 standard was frozen, and for which Nokia Oy now seeks excessive, supra-RAND royalties including because Nokia Oy is not entitled to collect any royalties from Lenovo United States on these untimely disclosed patents.

161.   As a direct, proximate, and foreseeable result of Nokia Corporation and Nokia Oy's unfair, deceptive, and wrongful conduct, as alleged above, Lenovo United States has suffered harm, both as a customer and as a supplier of downstream products.  This harm includes, among other things, suffering or being threatened with increased costs, loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

162.   The harm from Nokia Corporation and Nokia Oy's wrongful conduct also includes harm to the public and/or to competition in the form of lack of adoption of alternative technologies, higher prices and reduced innovation and quality for U.S. consumers purchasing products that support the H.264 standard, undermining the procompetitive aspects of standard setting processes, and chilling incentives to participate in beneficial standard setting processes. Unless such wrongful conduct is enjoined, Lenovo and the public will continue to suffer irreparable harm as a result of this wrongful conduct.

### COUNT III: DECLARATORY JUDGMENT OF UNENFORCEABILITY

163.   Lenovo United States repeats and realleges the allegations in the foregoing Paragraphs as if set forth fully herein.

164.   At all relevant times, Nokia Corporation and/or its successor-in-interest Nokia Oy had a contractual duty under the ITU's Patent Policy to disclose patent rights that might be essential to the H.264 standard.

-23-

165.   During development of the H.264 standard, Nokia Corporation employees attended meetings and submitted proposals for technology to be included in the H.264 standard.  However, at no time before the H.264 standard was frozen did Nokia Corporation disclose that it had already filed patent applications to which the Nokia Patents claim priority.  This late disclosure breached the contractual duty that Nokia Corporation and/or its successor-in-interest Nokia Oy owed under the ITU's Patent Policy.

166.   Nokia Corporation and/or Nokia Oy's repeated failure to disclose rights in the Nokia Patents to the ITU—for years after the H.264 standard was frozen, if at all—is part of a pattern of egregious behavior that prevented the ITU and other SSO members from fully evaluating the relevant technologies when developing the H.264 standard.  Upon information and belief, had the Nokia Patents been timely disclosed during the standard-setting process, members would have decided to standardize an alternative technology or left the relevant technology out of the standard.  The failure to disclose each of the Nokia Patents in a timely fashion distorted and impaired the standardization process in an egregious way.

167.   Nokia Corporation and Nokia Oy also unjustly benefitted from this late disclosure. For example, Nokia Oy now claims that each of the Nokia Patents is essential to practice the H.264 standard, even though Nokia Corporation and/or Nokia Oy deprived ITU members of the ability to consider non-patented alternatives or to eliminate the functionality from the standard that Nokia now claims is covered by the Nokia Patents, such that the accused functionality would not have been included in the H.264 standard but for the lack of timely disclosure.  Nokia Oy and/or Nokia Corporation also have unjustly benefited from this late disclosure by demanding and obtaining licensing revenue based on the allegedly standards-essential nature of the Nokia Patents, by claiming enhanced value to investors and others through an inflated sense of its patent portfolio (which includes the Nokia Patents), and by relying on the allegedly standard-essential nature of the Nokia Patents to accuse Lenovo United States (and others) of infringing the Nokia Patents.

-24-

168.   As assignee of the Nokia Patents, which were assigned to Nokia Corporation during the development of the H.264 standard, Nokia Oy is successor-in-interest to Nokia Corporation's obligations as a participant in development of the H.264 standard and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the Nokia Patents.

169.   In light of their conduct, Nokia Corporation and Nokia Oy impliedly waived the right to assert the Nokia Patents against anyone practicing the H.264 standard.  Therefore, Lenovo United States is entitled to a declaratory judgment that the Nokia Patents are unenforceable against the H.264 standard.

## DAMAGES

170.   As a result of Nokia Corporation and Nokia Oy's acts of misconduct, Lenovo United States has suffered and continues to suffer actual and consequential damages.  However, Lenovo United States does not yet know the full amount of damages, which will be ascertained through discovery and special accounting.  To the fullest extent permitted by law, Lenovo United States seeks recovery of damages at least sufficient to make Lenovo United States whole for the harm caused by Nokia Corporation and Nokia Oy.  Lenovo United States further seeks any other damages to which Lenovo United States is entitled under law or in equity.

## PRAYER FOR RELIEF

Wherefore, Lenovo United States respectfully requests that the Court grant the following relief:

A.   Enter judgment in favor of Lenovo United States and against Nokia Oy;

B.   Adjudge and decree that each of the Nokia Patents is unenforceable against anyone practicing the H.264 standard or otherwise making, using, selling, offering of sale, or importing products supporting the H.264 standard because Nokia Corporation and/or Nokia Oy breached the ITU's Patent Policy;

Case No.                                                                                                           COMPLAINT

C.     Adjudge and decree that each of the Nokia Patents is unenforceable against anyone practicing the H.264 standard or making, using, selling, offering for sale, or importing products supporting the H.264 standard because Nokia Corporation and/or Nokia Oy have engaged in unfair business acts and practices in violation of California law;

D.     Adjudge and decree that the Nokia Patents are unenforceable against anyone practicing the H.264 standard or making, using, selling, offering of sale, or importing products supporting the H.264 standard under the doctrine of implied waiver;

E.     Enjoin enforcement of the Nokia Patents against anyone practicing the H.264 standard or making, using, selling, offering for sale, or importing products supporting the H.264 standard;

F.     Award Lenovo United States the amount of damages it proves at trial;

G.     Award Lenovo Unites States all reasonable attorney fees and costs, including pursuant to the California Civil Procedure Code § 1021.5;

H.     Award taxable costs;

I.     Award interest; and

J.     Award Lenovo United States other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Lenovo United States hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

Case No.                                                                                                    COMPLAINT

Dated:  December 7, 2020

Respectfully submitted,

*/s/ Joseph F. Haag*
Joseph F. Haag (SBN 248749)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100
Joseph.Haag@wilmerhale.com

William F. Lee (*pro hac vice forthcoming*)
Richard W. O'Neill (*pro hac vice pending*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
William.Lee@wilmerhale.com
Richard.O'Neill@wilmerhale.com

Case No.                                                                           COMPLAINT