# EXHIBIT 2

(to TSB Circular 200, 7 July 1999)

# Guidelines for Implementation of the TSB Patent Policy

## CONTENTS

|     |     | Page |
| --- | --- | --- |
| 1.  | Purpose | 4 |
| 2.  | Background | 4 |
| 2.1 | Past history | 4 |
| 2.2 | Current situation | 4 |
| 2.3 | Maintaining the principle | 5 |
| 2.4 | Disclosure | 5 |
| 2.5 | General Patent Statement and Licensing Declaration | 6 |
| 3.  | Approval for new and revised Recommendations | 6 |
| 3.1 | Prerequisites | 6 |
| 3.2 | Consultation | 7 |
| 3.3 | Notification | 7 |
| 4.  | Work methods for Study Groups | 7 |
| 4.1 | Conduct of meetings | 7 |
| 4.2 | Submission of contributions | 7 |
| 5.  | ITU-T patent statements database | 8 |
| 5.1 | Database information | 8 |
| 5.2 | Patent declarations | 8 |
| 5.3 | Contact information | 8 |
| 6.  | Discovery of patents after publication | 8 |
| Appendix I - Statement on TSB patent policy | | 9 |
| Appendix II - Patent Statement and Licensing Declaration | | 10 |
| Appendix III - General Patent Statement and Licensing Declaration | | 12 |

Place des Nations  Telephone  +41 22 730 51 11  Telex 421 000 uit ch  Internet: itumail@itu.int
CH-1211 Geneva 20  Telefax Gr3: +41 22 733 72 56  Telegram ITU GENEVE  X.400  S=itumail; P=itu
Switzerland  Gr4: +41 22 730 65 00  A=400net; C=ch

# 1      Purpose

These guidelines are intended to assist the Telecommunication Standardization Bureau (TSB), the Study Groups and those that participate in the development of ITU-T Recommendations, in their understanding and implementation of the TSB Patent Policy. A copy of the TSB Patent Policy is attached as Appendix I. The guidelines encourage the early disclosure and identification of patents that may relate to Recommendations under development. In doing so, greater efficiency in standards development is possible and potential patent rights problems can be avoided.

These Guidelines supplement the TSB Patent Policy. In case of any disagreement, the TSB Patent Policy takes precedence over these Guidelines.

# 2      Background

## 2.1    Past history

Based on earlier practices in some CCITT Study Groups, a first version of a "Statement on CCITT Patent Policy" was developed in 1985. It underwent several slight revisions in the following years without however changing the substance. The purpose of this Statement was - and still is - to provide in simple words practical guidance (it is thus also called "Code of Practice") to the experts in the Study Groups in case patent rights matters arise when developing Recommendations. Considering that the experts are normally not familiar with the complex issue of patent rights, the Statement was drafted in its operative part as a checklist (paragraphs 2.1, 2.2 and 2.3), covering the three different cases which may arise if a Recommendation being developed fully or partly includes patent rights elements.

The underlying principle of the Statement is the same as in other standardization organizations which have similar patent rights policies (e.g. ISO, IEC, CEN/CENELEC, ANSI, IEEE) which is, to restrict discussions on patent rights in their technical bodies to a minimum and to leave the settlement of disputes on patent rights (licensing, royalties, etc.) to the parties concerned, in any case outside the standardization organization itself.

Despite (or perhaps better, because of) its simplicity, the "Code of Practice" has served CCITT and the ITU-T quite well. Its advice has been applied whenever patent rights issues have come up. Apart from a few cases, there have been very few patent rights problems encountered in the Study Groups.

## 2.2    Current situation

Recently, however, this situation has been changing, and discussions on patent rights issues are taking place more often than before. There are several reasons for this:

- the number of draft Recommendations involving patent rights is rising, in step with the emergence of new technologies (e.g. coding algorithm);
- international competition is increasing, patent rights holders are therefore less generous nowadays than they were in the past;
- new entrants (e.g. research institutions, universities) are eager to recover at least some of their costs through patent rights royalties;

- 3 -

- likewise, new small manufacturing companies attempt to benefit as much as possible from their own patent rights, but may face problems when having to pay royalties to several patent rights holders;
- discussions in GATT and (in Europe) on the ETSI patent rights policy and undertaking have brought patent rights issues into the public arena, much beyond the small community which was involved with patent rights in the past.

Against this background, it is not surprising that not only in the ITU, but also in other standardization organizations, the complexity of patent rights and standards has increased.

## 2.3    Maintaining the principle

Even in a changing patent rights environment, the underlying principle of the statement is to be maintained, i.e. the ITU should not engage in settling disputes on patent rights; this should be left - as in the past - to the parties concerned. This viewpoint is reaffirmed by the fact that none of the standardization organizations which use a similar code of practice as the ITU have departed from this principle. There are several sound reasons for such a firm position, two of which are noted here:

- direct involvement of the standardization organization in patent rights issues would be costly; either they would require additional, specialized staff or they would have to contract out such work to patent attorneys. Whichever practice was applied, it would entail substantial costs;
- even if costs did not matter, standardization organizations will most probably not be in a position to act as genuine arbitrators in patent rights disputes, for the simple reason that the disputing patent rights holders will never disclose all the information they need to act as a fair judge in a patent rights controversy. For example, in order to define what is fair and "reasonable" in a given case, one needs to know development and manufacturing costs, profits, etc. This kind of information is normally not disclosed to a third party with which no legal relationship has been established, as would be the case for a standardization organization vis-à-vis its member organizations.

## 2.4    Disclosure

In this context, the question arises at which point in time such patent rights disclosures should be made. The term "from the outset" as it appears in paragraph 1 of the TSB Patent Policy (see Appendix I below) implies that such information should be disclosed as soon as possible, i.e. as soon as it is becoming clear that an evolving draft Recommendation will, in fact, fully or partly include patented elements. This might not yet be possible when the first draft text appears (at this time, the text might be still too vague or subject to subsequent major modifications). It is desirable that contributions (normal Contributions, delayed Contributions, contributions to Rapporteur meetings, etc.) identify whether the proposal contains any existing patents and/or pending patent applications of their own and/or any third party. Such information should be provided on a "best effort" basis but there is no requirement for patent searches. See also 3.1 below.

C:\Users\5486\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\2TTZ1GRE\T04050000010001MSWE.doc    12/7/2020

### 2.5    General Patent Statement and Licensing Declaration

Any ITU Member State or Sector Member may submit a General Patent Statement and Licensing Declaration (see Appendix III below). The purpose of this form is to give patent holders the voluntary option of making a general licensing declaration relative to patented material contained in any of their contributions. Specifically, the licensing declaration declares the willingness to license in case part(s) or all of any proposals contained in contributions submitted by the organization are included in ITU-T Recommendation(s) and the included part(s) contain items that have been patented or for which patent applications have been filed and whose use would be required to implement ITU-T Recommendation(s).

The General Patent Statement and Licensing Declaration is not a replacement for the individual (per Recommendation) Patent Statement and Licensing Declaration (see 3.1 below) but is expected to improve responsiveness and early disclosure of the patent holder's compliance with the TSB Patent Policy.

The General Patent Statement and Licensing Declaration remains in force as long as it has not been withdrawn. It can be overruled by the individual (per Recommendation) Patent Statement and Licensing Declaration from the same patent holder for any particular Recommendation (expectation is that this will rarely occur).

The word "reciprocity", as used in the forms in Appendices II and III, means with respect to other parties that have a patent or patent claim required in the use or implementation of the relevant ITU-T Recommendation(s), the patent holder shall only be required to license to such parties if they are willing to license under options 1 or 2 of the Patent Statement and Licensing Declaration.

## 3    Approval for new and revised Recommendations

### 3.1    Prerequisites

Any ITU Member State or Sector Member organization aware of a patent held by itself or others, which may fully or partly cover elements of the draft Recommendation(s) proposed for approval, is requested to disclose such information to the TSB, in no case later than the date scheduled for approval of the Recommendation(s) in accordance with the TSB Patent Policy. To accelerate the handling of that information and to provide clear information in the TSB Patent Statements Databases, the Patent Statement and Licensing Declaration form (see Appendix II below) should be used. The purpose of this form is to ensure a standardized submission to the TSB of the declarations being made by patent holders and, most importantly, to require supporting information and an explanation if a patent holder declares their unwillingness to license under option 1 or 2 of the licensing declaration (i.e. declares option 3). Typically, one such form would be used for each Recommendation containing patented material. Multiple forms are appropriate if the patent holder has several patents and classifies them in different options of the licensing declaration and/or if the patent holder classifies different claims of a complex patent in different options of the licensing declaration. The "Patent Information" on page 2 of the form is desired but not required.

If the TSB receives from the patent holder, a statement of unwillingness to comply with the provisions of paragraphs 2.1 or 2.2 of the TSB Patent Policy, the Director will inform the relevant Study Group of this situation. The Study Group shall then take appropriate action which shall include, but may not be limited to, a review of the draft Recommendation giving consideration to its possible revision by

removing the potential conflict or through further examination and clarifying the technical considerations causing the conflict. This may lead to continuation of the developmental work on the Recommendation while parallel efforts are underway to resolve the patent issue.

### 3.2    Consultation

If the TSB has received a statement(s) indicating that the use of intellectual property, protected by one or more patent(s), issued or pending, may be required to implement a draft Recommendation, the Director of the TSB shall indicate this situation in the Circular announcing the intention to invoke the approval process.

This is the suggested text of the note to be included in the Circular: "The TSB has received a statement(s) indicating that the use of intellectual property, protected by one or more patent(s), issued or pending, may be required to implement this draft Recommendation. Available patent information can be accessed through TIES on the Internet (using either the World Wide Web or Gopher)."

### 3.3    Notification

Text shall be added to the cover sheets of all new and revised Recommendations urging users to consult the TSB patent database. Suggested wording is:

"The ITU draws attention to the possibility that the practice or implementation of this Recommendation may involve the use of a claimed Intellectual Property Right. The ITU takes no position concerning the evidence, validity or applicability of claimed Intellectual Property Rights, whether asserted by ITU Member States and Sector Members or others outside of the Recommendation processes."

"As of the date of approval of this Recommendation, the ITU had/had not received notice of intellectual property, protected by patents, which may be required to implement this Recommendation. However, implementors are cautioned that this may not represent the latest information and are therefore strongly urged to consult the TSB patent database."

## 4    Work methods for Study Groups

### 4.1    Conduct of meetings

It is the view of the ITU that early disclosure of asserted patent rights is desirable, it being acknowledged that early disclosure will contribute to the efficiency of the process by which Recommendations are established and will tend to minimize any possible disagreements with respect to such rights or their applicability to proposed Recommendations. Therefore, each Study Group in the course of the development of a proposed Recommendation shall request the disclosure of any known patents relevant to the proposed Recommendation.

Chairmen will ask, at the beginning of each meeting, whether anyone has knowledge of patents, the use of which may be required to implement the Recommendation being considered. The fact that the question was asked will be recorded in the Working Party or Study Group meeting report, along with any affirmative responses.

### 4.2    Submission of contributions

Contributors are reminded, when submitting contributions, that the requirements for early disclosure of patent information, as contained in the statement on TSB Patent Policy, apply.

## 5    ITU-T patent statements database

- 6 -

In order to facilitate both the standards making process and the application of ITU-T Recommendations, the (TSB) makes available to the public a Patent Statements database composed of information that was communicated to the TSB by administrations, private enterprises, etc. that participate in the standards making activities of the Sector. The Statements may contain information on specific patents or may contain no such information, but rather give a statement about an organization's compliance with the TSB Patent Policy for a particular Recommendation. The databases also contain a record of General Patent Statement and Licensing Declarations.

The URL for the database is: http://www.itu.int/ITU-Databases/TSBPatent/

### 5.1     Database information

The Patent Statements database is not certified to be either accurate or complete, but only reflects the information that has been communicated to the TSB. As such, the database may be viewed as simply raising a flag to alert users that they may wish to contact the organizations who have communicated Patent Statements to the TSB in order to determine if patent licenses must be obtained for application of a particular Recommendation.

### 5.2     Patent declarations

The declared choice of the organization in its communication to the TSB is shown in the database. Most often the choice is given as "Pat.pol.2.2", which means that the organization subscribes to paragraph 2.2 of the Statement on TSB Patent Policy. However, the ITU disclaims any definitive interpretation of the organization's statement. This must be determined by direct negotiations with the organization.

### 5.3     Contact information

In completing the forms in Appendices II and III, attention should be given to supplying contact information that will remain valid over time. Where possible, the "Name and Department" and e-mail address should be generic. Also it is preferable, where possible, that organizations, including multinational organizations, indicate the same contact point on all forms submitted.

### 6     Discovery of patents after publication

The TSB Patent Policy also applies to situations involving the discovery of patents that may be required for use of a Recommendation subsequent to its publication or the initial issuance of a patent after publication. Once disclosure is made, the patent holder will be requested to provide the same assurances to the TSB as are required in situations where patents are known prior to publication of a draft Recommendation.

If the patent holder is unwilling to license or waive its rights, the Recommendation will need to be revised or withdrawn and its publication suspended. In such a case, the TSB Director will promptly advise the Study Group responsible for the affected Recommendation so that appropriate action can be taken. Such action shall include, but may not be limited to, a review of the Recommendation giving consideration to its possible revision by removing the potential conflict or through further examination and clarifying the technical considerations causing the conflict.

- 7 -

APPENDIX I

(WTSC-96, Resolution 1, Appendix I to Section 8)

**Statement on TSB patent policy**

Over the years, the TSB has developed a "code of practice" regarding intellectual property rights (patents) covering, in varying degrees, the subject matters of ITU-T Recommendations[1]. The rules of the "code of practice" are simple and straightforward. Recommendations are drawn up by telecommunications and not patent experts; thus, they may not necessarily be very familiar with the complex international legal situation of intellectual property rights such as patents, etc.

ITU-T Recommendations are non-binding international standards. Their objective is to ensure compatibility of international telecommunications on a world-wide basis. To meet this objective, which is in the common interests of all those participating in international telecommunications (network and service providers, suppliers and users) it must be ensured that Recommendations, their applications, use, etc. are accessible to everybody. It follows, therefore, that a commercial (monopolistic) abuse by a holder of a patent embodied fully or partly in a Recommendation must be excluded. To meet this requirement in general is the sole objective of the TSB code of practice. The detailed arrangements arising from patents (licensing, royalties, etc.) are being left to the parties concerned, as these arrangements might differ from case to case.

This code of practice may be summarized as follows (it should be noted that ISO operates in a very similar way):

**1**     The TSB is not in a position to give authoritative or comprehensive information about evidence, validity or scope of patents or similar rights, but it is desirable that the fullest available information should be disclosed. Therefore, any ITU-T member organization putting forward a standardization proposal should, from the outset, draw the attention of the TSB to any known patent or to any known pending patent application, either their own or of other organizations, although the TSB is unable to verify the validity of any such information.

**2**     If an ITU-T Recommendation is developed and such information as referred to in paragraph **1** has been disclosed, three different situations may arise:

**2.1**     The patent holder waives his rights; hence, the Recommendation is freely accessible to everybody, subject to no particular conditions, no royalties are due, etc.

**2.2**     The patent holder is not prepared to waive his rights but would be willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside the ITU-T.

**2.3**     The patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2; in such case, no Recommendation can be established.

**3**     Whatever case applies (2.1, 2.2 or 2.3), the patent holder has to provide a written statement to be filed at the TSB. This statement must not include additional provisions, conditions, or any other exclusion clauses in excess of what is provided for each case in paragraphs 2.1, 2.2 and 2.3.

---

[1] Formerly CCITT Recommendations

APPENDIX II

**Patent Statement and Licensing Declaration**

(Typically one per ITU-T Recommendation)
*This declaration does not represent an implied license grant*

| | | |
|---|---|---|
| Please return to: | Director<br>Telecommunication Standardization Bureau<br>International Telecommunication Union | Place des Nations<br>CH-1211 Geneva 20, Switzerland<br>Fax: +41 22 730 5853 |

**Patent Holder/Organization:**
Legal Name  _____

**Contact for license application:**
Name & Department  _____
Address  _____
         _____

Tel.  _____
Fax  _____
E-mail  _____

**ITU-T Recommendation:**
Number  _____
Title  _____

**Licensing declaration**
The Patent Holder believes to hold granted patents and/or pending applications, whose use would be required to implement the above ITU-T Recommendation and hereby declares, in accordance with the Statement on TSB Patent Policy (WTSC-96, Resolution 1, Appendix I to Section 8), that (check <u>one</u> box only).

☐   1   The Patent Holder is prepared to grant – on the basis of reciprocity for the above ITU-T Recommendation – a <u>free</u> license to an unrestricted number of applicants on a worldwide, non-discriminatory basis to manufacture, use and/or sell implementations of the above ITU-T Recommendation.

☐   2   The Patent Holder is prepared to grant – on the basis of reciprocity for the above ITU-T Recommendation – a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to manufacture, use and/ or sell implementations of the above ITU-T Recommendation.
Such negotiations are left to the parties concerned and are performed outside the ITU-T.

☐   3   The Patent Holder is unwilling to grant licenses according to the provisions of either 1 or 2 above. In this case, the following information must be provided as part of this declaration:
- patent registration/application number;
- an indication of which portions of the Recommendation are affected.
- a description of the patent claims covering the Recommendation;

**Signature**
Organization  _____
Name of authorized person  _____
Title of authorized person  _____
Signature  _____
Place, Date  _____

| Patent Information (desired but not required) | | | |
|---|---|---|---|
| No. | Registration Number/ Country | Title/ Inventor | Status [granted/ pending] |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |

- 10 -

**Appendix III**

# General Patent Statement and Licensing Declaration

Please return to:  Director                                    Place des Nations
                   Telecommunication Standardization Bureau    CH-1211 Geneva 20, Switzerland
                   International Telecommunication Union       Fax: +41 22 730 5853

---

**Patent Holder/Organization:**
  Legal Name   _____

**Contact for license application:**
  Name & Department   _____
  Address   _____
            _____
  Tel.   _____
  Fax   _____
  E-mail   _____

**Licensing declaration**

In case part(s) or all of any proposals contained in contributions submitted by the organization above are included in ITU-T Recommendation(s) and the included part(s) contain items that have been patented or for which patent applications have been filed and whose use would be required to implement ITU-T Recommendation(s), the above Patent Holder hereby declares, in accordance with the Statement on TSB Patent Policy (WTSC-96, Resolution 1, Appendix I to Section 8), that (check <u>one</u> box only):

☐   1   The Patent Holder is prepared to grant – on the basis of reciprocity for the relevant ITU-T Recommendation(s) – a <u>free</u> license to an unrestricted number of applicants on a worldwide, non-discriminatory basis.

☐   2   The Patent Holder is prepared to grant – on the basis of reciprocity for the relevant ITU-T Recommendation(s) – a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions.

**Signature**
  Organization   _____
  Name of authorized person   _____
  Title of authorized person   _____
  Signature   _____
  Place, Date   _____

---

----------------------------------